UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NELLIE BROWN and GERARD FONTE,

                      Plaintiffs,

     v.

TOWN OF AMHERST, et al.,

                      Defendants.

_____

**DECISION AND ORDER**

1:23-CV-00993 EAW

## <u>INTRODUCTION</u>

Plaintiffs Nellie Brown ("Plaintiff Brown") and Gerard Fonte ("Plaintiff Fonte") (collectively "Plaintiffs") filed this action on September 20, 2023, asserting claims pursuant to 42 U.S.C. § 1983 for violations of their constitutional rights and a common-law claim for conversion against defendants Town of Amherst, Officer David Awald ("Defendant Awald"), Officer Trey Johnson ("Defendant Johnson"), Officer Caryn Gould ("Defendant Gould"), Officer Marie Evans ("Defendant Evans"), Officer Michael Finnigan ("Defendant Finnigan"), Officer William Julicher ("Defendant Julicher"), Detective Terrence Walsh ("Defendant Walsh"), Lieutenant Thomas Ratzel ("Defendant Ratzel"), Captain Bruce Mann ("Defendant Mann"), and Captain Kevin Brown ("Defendant Brown") (collectively "Defendants").  (Dkt. 1).

Currently before the Court is Defendants' motion to dismiss the complaint (Dkt. 5) and Plaintiffs' cross-motion to strike, extend time for service, and to amend their complaint (Dkt. 9).  As explained below, the pending motions are granted in part and denied in part.  Plaintiffs' options given this resolution are articulated below.  Plaintiffs are directed to file

a letter with the Court within 10 days of this Decision and Order identifying the option(s) that they intend to pursue.

## **BACKGROUND**

The following facts are taken from Plaintiffs' complaint. (Dkt. 1). As required at this stage of the proceedings, the Court treats Plaintiffs' allegations as true.

Plaintiff Brown and Plaintiff Fonte are married and live in East Amherst, New York. (*Id.* at ¶ 26). Plaintiff Brown's grandfather, Frank Castellana, owned a gunsmith and locksmith business in West Virginia, and before his death he came into possession of a Mauser C96 pistol ("the Mauser"). (*Id.* at ¶ 28). Mr. Castellana received paperwork confirming his ownership and the fact that the Mauser was a war trophy from World War II. (*Id.* at ¶ 28). Plaintiff Brown's mother, Marie Brown, inherited the Mauser and other firearms from her father, Mr. Castellana, upon his death. (*Id.* at ¶ 29). Plaintiff Brown located multiple firearms in her mother's home after moving her into an assisted living facility, including the Mauser. (*Id.* at ¶ 32). Plaintiff Fonte began the process of obtaining his pistol permit to ensure that Plaintiffs could legally own the inherited firearms. (*Id.* at ¶ 33).

Plaintiff Fonte contacted William Fowler, Jr., the Supervisor of the Pistol Permit Department, who advised Plaintiff Fonte to turn the weapons over to the Town of Amherst until pistol permits could be obtained. (*Id.* at ¶ 34). Supervisor Fowler gave Plaintiff Fonte an "Application for Non-Destruction" to complete, which Plaintiff Fonte understood to be a legal shield for firearms until the proper paperwork was obtained. (*Id.* at ¶ 35). Plaintiffs turned the firearms over to the Town of Amherst Police Department on October 20, 2015.

(*Id.* at ¶ 36).  Plaintiff Fonte also completed a "Safekeeping of Weapons" form as part of this process.  (*Id.* at ¶ 36).

On November 18, 2015, Plaintiff Fonte completed and filed the "Application for Non-Destruction" for the Mauser.  He selected the category of "semi-automatic" for the type of weapon.  (*Id.* at ¶ 38).

On May 26, 2016, Judge William Boller granted Plaintiff Fonte's application, ensuring the protection and non-destruction of the Mauser.  (*Id.* at ¶ 42).  On June 15, 2016, Plaintiff Fonte received a letter from Supervisor Fowler stating that the Certificate of Non-Destruction had been approved and that all the firearms were added to Plaintiff Fonte's pistol permit.  (*Id.* at ¶ 44).  The letter advised Plaintiff Fonte that he could pick up the firearms from the Amherst Police Department.  (*Id.* at ¶ 44).

On June 20, 2016, Plaintiff Fonte retrieved all of the firearms.  (*Id.* at ¶ 45).  Unbeknownst to Plaintiffs until the Mauser was re-acquired, the Mauser was actually a variant called the M712, or Schnellfeuer, which was capable of becoming fully automatic.  (*Id.* at ¶ 46).  Once Plaintiff Fonte conducted additional research that confirmed that the Mauser was a M712, (*id.* at ¶ 47), and that his current pistol permit would not allow for his ownership of the Mauser, on June 22, 2016, Plaintiff Fonte resubmitted the Mauser to the Town of Amherst Police Department.  (*Id.* at ¶ 48).

Plaintiffs then began the process of selling the Mauser with federal approval.  (*Id.* at ¶ 50).  Plaintiff Fonte requested that the Town of Amherst provide him an opportunity to view the Mauser in order to take photographs for the sale and transfer of the firearm.

(*Id.* at ¶ 51).  During that exercise, Plaintiff Fonte told Defendant Gould how valuable the Mauser was and advised that he was currently in the process of selling it.  (*Id.* at ¶ 52).

In July 2016, Plaintiff Fonte contacted the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to inquire about laws and regulations governing the ownership and sale of the Mauser.  (*Id.* at ¶¶ 53, 54).  Plaintiffs located an individual at a gun store in Tulsa, Oklahoma, who was interested in purchasing the Mauser, but the parties agreed to delay the purchase until Plaintiff Brown's mother's estate was officially settled and her will was probated because the ATF would not transfer the Mauser until that process was complete.  (*Id.* at ¶¶ 56, 57).

On October 26, 2018, Plaintiff Brown became the legal possessor of her mother's firearms through a Surrogate's Court decree.  (*Id.* at ¶ 58).  On March 10, 2019, Plaintiffs submitted ATF Form-4 to facilitate the transfer.  (*Id.* at ¶ 59).  On June 4, 2020, Defendant Johnson called Plaintiff Fonte to discuss the length of time that the Mauser had been in the Town of Amherst Police Department custody.  (*Id.* at ¶ 60).  Plaintiff Fonte explained that he had started the transfer process but that it was a lengthy process to acquire possession of the Mauser through probate.  (*Id.* at ¶ 61).  It was agreed that another year would be added on to the Mauser's safekeeping with the Town of Amherst.  (*Id.* at ¶¶ 61, 62).  Officer Johnson acknowledged to Plaintiff Fonte how rare and valuable the Mauser was and assured Plaintiff Fonte that the Amherst Police Department would notify him before they took any action regarding the Mauser's safekeeping.  (*Id.* at ¶ 63).  Plaintiff Fonte was again contacted by the ATF, who requested additional photographs of the Mauser before they could approve the requested transfer.  (*Id.* at ¶ 65).

- 4 -

Without Plaintiffs' knowledge, on August 18, 2021, Defendant Walsh and Defendant Johnson signed over the Mauser to the custody of Covanta Energy to be destroyed. (*Id.* at ¶ 66). When Plaintiff Fonte contacted the Amherst Police Department on June 15, 2022, to schedule a time to take updated photographs of the Mauser, he was informed that the Mauser was destroyed almost a year earlier. (*Id.* at ¶ 67). Defendant Walsh incorrectly stated that the Amherst Police Department had informed Plaintiffs before the Mauser was destroyed. (*Id.* at ¶ 68). Plaintiffs requested to be provided with all paperwork in Defendants' possession regarding the destruction of the Mauser, but Defendants refused to provide the requested information or to agree to meet with Plaintiffs. (*Id.* at ¶ 70).

On June 17, 2022, Plaintiff Fonte entered the Amherst Police Department to speak to Defendant Walsh and express his displeasure about the destruction of the Mauser. (*Id.* at ¶¶ 71, 72). On June 29, 2022, Defendant Mann contacted Plaintiff Fonte and told him that the Town of Amherst held the Mauser for more than a year and it "isn't a storage facility for residents." (*Id.* at ¶ 74). Defendant Mann also stated that Plaintiffs were notified before the weapon was destroyed but could not provide any documentation to substantiate this statement. (*Id.* at ¶ 75). Plaintiffs were distressed by the destruction of the rare and valuable firearm, which also rendered the accompanying historical paperwork worthless. (*Id.* at ¶¶ 76, 77).

In their complaint, Plaintiffs allege the following claims pursuant to § 1983 and state law: (1) violation of procedural due process against all Defendants; (2) violation of substantive due process against all Defendants; (3) unlawful taking against all Defendants;

(4) violation of the Fourteenth Amendment by the Town of Amherst; (5) failure to intervene against all Defendants; (6) abuse of process against all Defendants; (7) conspiracy to violate Plaintiffs' constitutional rights against all Defendants; and (8) a state-law claim for conversion against Defendant Walsh and Defendant Johnson.

## PROCEDURAL BACKGROUND

Plaintiffs filed their complaint on September 20, 2023.  (Dkt. 1).  On November 13, 2023, Defendants filed the instant motion to dismiss.  (Dkt. 5).  Plaintiffs filed their opposition and cross-motion to strike, for an extension of time to serve, and to amend on January 4, 2024.  (Dkt. 9).  Defendants filed a reply on January 11, 2024.  (Dkt. 12).

## DISCUSSION

Defendants have moved to dismiss the complaint for insufficient service of process as to certain defendants, and for failure to state a claim upon which relief can be granted. They also challenge Plaintiffs' standing to pursue their asserted claims.  In response to the motion, Plaintiffs cross-moved for an extension of time to serve, to amend their complaint, and to strike the affidavit of Michael Camilleri (Dkt. 5-2) and several exhibits submitted by Defendants in support of their motion.

I.      **Legal Standards**[1]

A.      **Rule 12(b)(1)**

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms, S.á.r.l*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quotation and citation omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "When considering a motion to dismiss for lack of subject matter jurisdiction . . ., a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). In addition, a court is not limited to the allegations in the complaint and can "refer to evidence outside the pleadings," *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002), but it "may not rely on conclusory or hearsay statements contained in the affidavits," *J.S. v. Attica Cent. Schools*, 386 F.3d 107, 110 (2d Cir. 2004). "Indeed, a challenge to the jurisdictional elements of a plaintiff's claim allows the Court to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Celestine v.*

---

[1]     Although Defendants' notice of motion indicates that the motion is brought under Rule 12(b)(2), 12(b)(3), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure, the arguments advanced regarding Plaintiffs' standing impact the Court's subject matter jurisdiction, which is governed by Rule 12(b)(1). In addition, Rule 12(b)(3), which addresses improper venue, is not mentioned at all in Defendants' moving papers and the Court presumes its inclusion in the notice of motion was in error and will not address it herein.

*Mt. Vernon Neighborhood Health Ctr.*, 289 F. Supp. 2d 392, 399 (S.D.N.Y. 2003) (quotation omitted), *aff'd*, 403 F.3d 76 (2d Cir. 2005).  Whether a complaint should be dismissed for lack of subject matter jurisdiction is a threshold issue.  *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

### B.   Rules 12(b)(2) and 12(b)(5)

"[A] Rule 12(b)(5) motion challenges the mode of delivery or the lack of delivery of the summons and complaint."  *Coon v. Shea*, No. 2:14-CV-85, 2014 WL 5847720, at *4 (D. Vt. Sept. 5, 2014) (quotation omitted), *report and recommendation adopted in relevant part*, 2014 WL 5849053 (D. Vt. Nov. 12, 2014).  "Objections pursuant to Rule 12(b)(2) concern lack of personal jurisdiction, which results when a summons and complaint have not been served on the defendant pursuant to Rule 12(b)(5)."  *Jackson v. City of N.Y.*, No. 14-CV-5755 GBD KNF, 2015 WL 4470004, at *4 (S.D.N.Y. June 26, 2015) (quotation omitted); *Fantozzi v. City of New York*, 343 F.R.D. 19, 25 (S.D.N.Y. 2022) ("While Rules 12(b)(5) and 12(b)(2) are independent bases upon which dismissal may be granted, when service of process is at issue, they are closely interrelated." (internal quotation and citation omitted)); *George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 442 n.7 (S.D.N.Y. 2016) ("Thus, although a Rule 12(b)(5) motion is distinct from a Rule 12(b)(2) motion, which challenges 'the actual existence of personal jurisdiction,' *id.* both go to the Court's ability to exercise judicial power over the defendant; consequently, as a matter of both logic and efficiency, a Rule 12(b)(5) motion is ordinarily considered before any merits-based challenge to the complaint."); *see also* C. Wright, A. Miller, & M. Kane, 5B Fed. Prac. & Proc. Civ. § 1353 (3d ed.) ("Although the questions of personal jurisdiction and

service of process are closely interrelated, service of process is merely the means by which a federal court gives notice to the defendant and asserts jurisdiction over him.").

A plaintiff bears the burden of proving that service was effective on a Rule 12(b)(5) motion to dismiss. *Ahluwalia v. St. George's Univ.*, *LLC*, 63 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (quotation omitted), *aff'd*, 626 F. App'x 297 (2d Cir. 2015); *Sunset Homeowners Ass'n, Inc. v. DiFrancesco*, No. 1:19-CV-00016 EAW, 2019 WL 1597497, at *6 (W.D.N.Y. Apr. 15, 2019) ("When a defendant raises a Rule 12(b)(5) challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy." (internal quotations and citations omitted)).  A court may consider matters outside the pleadings to assess the sufficiency of service on a Rule 12(b)(5) motion. *Wilson v. Cuomo*, No. CV214815(GRB)(AYS), 2022 WL 4644695, at *3 (E.D.N.Y. Aug. 28, 2022), *report and recommendation adopted*, 2022 WL 4662825 (E.D.N.Y. Sept. 30, 2022).

### C.    Rule 12(b)(6)

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [pleading], documents attached to the [pleading] as exhibits, and documents incorporated by reference in the [pleading]." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the [claimant]." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility

when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant]'s obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the [pleading]'s '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

### D.  Section 1983 Claims

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

As for any § 1983 claim, a plaintiff is required to demonstrate a defendant's personal involvement in the deprivation of a federal constitutional right. *Kravitz v. Purcell*, 87 F.4th

111, 129 (2d Cir. 2023); *see also Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020)

(a § 1983 plaintiff must establish "that each Government-official defendant, through the

official's own individual actions, has violated the Constitution" (quotation and citation

omitted)); *Bellinger v. Fludd*, No. 20-CV-2206 (EK)(SIL), 2020 WL 6118823, at *2

(E.D.N.Y. Oct. 16, 2020) ("A plaintiff must allege the direct or personal involvement of

each of the named defendants in the alleged constitutional deprivation." (citing *Farid v.*

*Ellen*, 593 F.3d 233, 249 (2d Cir. 2010))).

## II.   Challenges to the Court's Jurisdiction

### A.   Standing

Defendants argue that Plaintiffs lack standing to pursue their claims because they

do not have a constitutionally protected property interest in the Mauser, which is required

for each of their claims.   Defendants contend that the Mauser is a machine gun which could

not properly pass by decree of the Surrogate's court, and that Plaintiffs had not completed

the requirements of the relevant federal laws for transfer of the property from Plaintiff

Brown's grandfather to themselves at the time of its destruction.   (Dkt. 5-1 at 11).

"[T]he doctrine of standing serves to identify those disputes which are appropriately

resolved through the judicial process."   *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

The Second Circuit has explained:

> To satisfy the requirements of Article III standing, plaintiffs must
> demonstrate "(1) [an] injury-in-fact, which is a concrete and particularized
> harm to a legally protected interest; (2) causation in the form of a fairly
> traceable connection between the asserted injury-in-fact and the alleged
> actions of the defendant; and (3) redressability, or a non-speculative
> likelihood that the injury can be remedied by the requested relief."

*Hu v. City of New York*, 927 F.3d 81, 89 (2d Cir. 2019) (quoting *Selevan v. New York Thruway Auth.*, 711 F.3d 253, 257 (2d Cir. 2013)).  "These elements are not mere pleading requirements but rather an indispensable part of the plaintiff's case."  *Id.* (quotation and alteration omitted).  "A motion to dismiss for lack of Article III standing challenges the subject-matter jurisdiction of a federal court and, accordingly, is properly brought under Fed. R. Civ. P. 12(b)(1)."  *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020).

At the pleading stage, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) based on lack of standing, a plaintiff must "allege facts that affirmatively and plausibly suggest that it has standing to sue."  *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).[2]  "The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements."  *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) (quotation omitted).

Defendants cite to two federal statutes in support of their standing argument.  The first provides:

> (o)(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.
> (2) This subsection does not apply with respect to--
>     (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or
>     (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

---

[2]     Plaintiffs have no evidentiary burden because Defendants' standing challenge is facial.  (*See* Dkt. 5-1 at 9-12).  *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).

18 U.S.C. § 922(o).  The second provides that it "shall be unlawful for any person . . . (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record."  26 U.S.C. § 5861(d).

Accepting Defendants' argument about standing requires that the Court decide as a matter of law that the allegations in Plaintiffs' complaint establish that the Mauser is a machine gun and that Plaintiffs did not comply with the requirements for transfer of the property from Plaintiff Brown's grandfather to Plaintiffs, entitling the Town of Amherst to destroy it.  But Plaintiffs dispute both points.  They do not concede that the Mauser was a fully automatic firearm and highlight the allegations in the complaint stating that the Mauser was capable of functioning as a semi-automatic firearm and they were advised by an ATF employee that the Mauser should be classified as "any other weapon."  (Dkt. 1 at ¶¶ 41, 55).  In addition, they contend that irrespective of whether the Mauser was a fully automatic firearm, they did take the necessary steps to transfer ownership of it and outlined in the complaint the measures taken to comply with the appropriate requirements.  In other words, Plaintiffs contend that the complaint demonstrates that Plaintiffs had a possessory interest in the Mauser and legal right to sell it.  The Court cannot resolve these disputed issues of fact based on the information before it on the instant motion to dismiss.[3]

---

[3]      In addition, Defendants argue that "[a]fter nearly six years, five of which the Amherst Police Department held the Mauser for, the plaintiffs did not even seek possession of the Mauser as they were not entitled to it, but rather wanted the Town of Amherst Police Department to continue to hold it while they inspected it and prepared it for sale.  This further evidences that plaintiffs' complaint does not sufficiently plead that the plaintiffs have standing to bring the subject lawsuit."  (Dkt. 5-1 at 12).  To the extent that this argument suggests that Plaintiffs relinquished or abandoned any property or possessory

Because Defendants have not established that Plaintiffs failed to plausibly allege their standing to assert claims relating to the Mauser, this portion of Defendants' motion to dismiss is denied.

### B.    Improper Service

Defendant Brown, Defendant Evans, Defendant Gould, Defendant Mann, Defendant Ratzel, and Defendant Finnigan challenge the sufficiency of service upon them. The Court agrees in part that service was insufficient.

Pursuant to Fed. R. Civ. P. 4(e), Plaintiffs could effectuate service on these defendants by any of the following means:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
> (A) delivering a copy of the summons and of the complaint to the individual personally;
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). In addition, Rule 4(l) provides that "[u]nless service is waived, proof of service must be made to the court." Fed. R. Civ. P. 4(l); *see also* L.R. Civ. P. 4 ("Proof of service shall be filed with the Clerk of Court.").

Service of process in New York is governed by section 308 of the Civil Practice Law and Rules ("CPLR"). Under this statute, service can be made upon an individual

---

interest they had in the Mauser by not timely recovering the Mauser from the Town of Amherst, this too is a factual issue that cannot be resolved on a Rule 12 motion.

defendant by delivering the summons on the person to be served, CPLR 308(1), or pursuant to CPLR 308(2), service can be made "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business[.]" CPLR 308(2). "In New York, a process server's affidavit of service establishes a prima facie case of the account of the method of service, and thus, in the absence of contrary facts, [it is] presume[d] that [defendant] was properly served with the complaint." *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002).

"New York courts have construed 'actual place of business' to include (1) a place where the defendant regularly transacts business, or (2) an establishment that the defendant owns or operates, where there is a clear identification of the work performed by her within that place of business." *Maldonado v. Arcadia Bus. Corp.*, No. 14CV4129(DLI)(RML), 2015 WL 12791329, at *2 (E.D.N.Y. Aug. 27, 2015) (quoting *Warshun v. New York Cmty. Bancorp., Inc.*, 957 F. Supp. 2d 259, 266 (E.D.N.Y. 2013)). The New York statute also directs that the summons be left with an individual of "suitable age and discretion." CPLR 308(2). To be of suitable age and discretion, the "person 'must objectively be of sufficient maturity, understanding and responsibility under the circumstances so as to be reasonably likely to convey the summons to the defendant.'" *Maldonado,* 2015 WL 12791329, at *2 (quoting *Entm't by J&J, Inc. v. Las Hermanas Rest., Inc.*, No. 02 CV 1119, 2006 WL 3711565, at *2 (S.D.N.Y. Dec. 14, 2006)).

The summonses for Defendant Brown, Defendant Evans, Defendant Gould, Defendant Mann, Defendant Ratzel, and Defendant Finnigan reflect that they were served by leaving the documents with Officer Oishei, who Defendants acknowledge was authorized to accept service on behalf of individuals employed by the Town of Amherst. (Dkt. 3; Dkt. 12 at 3 ("Officer Oishei was authorized to properly accept service on behalf of the defendants within the employment of the Town of Amherst")).  In support of the motion to dismiss, Defendants submitted a declaration from Michael Camilleri ("Camilleri"), the Assistant Chief of Police for the Town of Amherst, who attests that he reviewed the Town of Amherst database to ascertain whether the named Defendants were current employees of the Town of Amherst at the time the papers were served.  (Dkt. 5-2 at ¶ 3).  In his affidavit, Camilleri states that Defendant Ratzel is retired; Defendant Mann is deceased;[4] Defendant Finnigan was never employed by the Amherst Police Department; Defendant Evans is a dispatcher not an officer and is retired; Defendant Gould is a dispatcher for the Town of Amherst Police Department and not an officer; and Defendant Brown is in charge of the Accident Investigation Unit and his involvement in the events in the complaint is unknown.  (*Id*. at ¶¶ 5-10).

Plaintiffs move to strike Camilleri's affidavit, arguing that his sworn statements are matters outside the pleadings and "therefore the Court must either strike it or convert Defendants' motion into a motion for summary judgment."  (Dkt. 9 at 4).  Plaintiffs are incorrect.  As noted above, "[i]n considering a Rule 12(b)(5) motion, a court may also look

---

[4]     Plaintiffs do not oppose the dismissal of Defendant Mann in light of this representation.  (Dkt. 9 at 6).

to materials outside the complaint to determine whether it has jurisdiction." *Digilytic Int'l FZE v. Alchemy Fin., Inc.*, No. 20-CV-4650 (ER), 2024 WL 4008120, at *6 (S.D.N.Y. Aug. 30, 2024); *Citibank N.A. v. Hello Flatbush LLC*, No. 23-CV-10920 (AS), 2024 WL 3362624, at *3 (S.D.N.Y. July 10, 2024) ("[T]he plaintiff bears the burden of proving adequate service, and the Court may look to materials outside of the pleadings to determine whether proper service has occurred." (quoting *Zaerpour v. JP Morgan Chase Bank*, 21 Civ. 9680 (JPC) (JLC), 2022 WL 3159287, at *1 (S.D.N.Y. Aug. 8, 2022))).  The Court accordingly has considered the Camilleri affidavit in assessing the sufficiency of service and denies Plaintiffs' motion to strike.

In their memorandum of law, Defendants argue that delivery of the summonses to Officer Oishei for the six identified individual defendants was insufficient "because the above-named officers are not employees of the Town of Amherst."  (Dkt. 5-1 at 8).  But this statement directly contradicts Camilleri's affidavit, which indicates that Defendant Gould was a dispatcher employed by the Town of Amherst Police Department.  Camilleri also states that Defendant Brown is in charge of the Accident Investigation Unit but "his association with the events alleged in the complaint are unknown."  (Dkt. 5-2 at ¶¶ 9, 10).  It is not for Camilleri to determine whether Defendant Gould or Defendant Brown were properly named by Plaintiffs as defendants.  If, as the Camilleri affidavit indicates, Defendant Gould and Defendant Brown are employees of the Town of Amherst, and Defendants concede that Officer Oishei is as authorized to accept service for individuals employed by the Town of Amherst, then service on Defendant Gould and Defendant

Brown in this manner was appropriate.[5]  Defendants' motion to dismiss the claims against

Defendant Gould and Defendant Brown for improper service is therefore denied.

As to Defendant Evans, Defendant Ratzel, and Defendant Finnigan, Plaintiffs

contend that service of these defendants was sufficient because "Plaintiffs' process server

reasonably believed that an agent of the Town of Amherst Police Department, Officer

Oishei, was authorized to and properly accepted service on behalf of these defendants at

their place of employment."  (Dkt. 9 at 6).  But Plaintiffs may not shift the burden to

Defendants' representative to assess at the time of service whether each named party was

a Town employee, nor do the cases cited by Plaintiffs support that position or demonstrate

that service on these Defendants was effective, which is Plaintiffs' burden.  *Khan v. Khan*,

360 Fed. App'x 202, 203 (2d Cir. 2010) (burden is on plaintiff to establish that service was

sufficient).

---

[5]      In a footnote in their brief, Plaintiffs now acknowledge that Defendant Caryn Gould
was inadvertently named as a defendant and that they intended to name Officer Matthew
Gould instead.  (Dkt. 9 at 1 n.1).  They "respectfully request leave to file an amended
complaint pursuant to Fed. R. Civ. P. 15 to properly name the defendant as Officer Matthew
Gould should the Court find the allegations in the complaint are sufficient to state a
plausible claim for relief against Officer Gould." (*Id*.).  The docket reflects that Plaintiffs
recently attempted to obtain a summons for Matthew Gould (Dkt. 13), which was
appropriately declined by the Clerk because Matthew Gould is not yet a named defendant.
As set forth herein, the Court will permit Plaintiffs leave to amend their complaint with
respect to the claims that they attempted to assert against the presently named defendants,
but if Plaintiffs seek to assert claims against a defendant such as Matthew Gould who has
not been named, they must file a formal motion seeking that relief.  A footnote in a
memorandum of law is not the appropriate place to request affirmative relief from the
Court, especially when there may be issues as to whether the claims against Matthew Gould
would relate back for statute of limitations purposes.

Alternatively, Plaintiffs request that because Defendants were not prejudiced by their attempted service on Officer Oishei, that the Court allow Plaintiffs an opportunity to remedy the defect by permitting an extension of the service deadline.  They contend that a denial of their proposed extension request would serve to bar certain claims by operation of the applicable statute of limitations.   In response, Defendants argue that because Plaintiffs' initial attempts at service were so blatantly improper, they should not be rewarded with an extension of time to attempt service again.

Pursuant to Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against the defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m).  Although Plaintiffs have not timely served Defendant Evans, Defendant Ratzel, and Defendant Finnigan under any section of Rule 4 or New York state law, in light of Plaintiffs' apparent efforts to serve the summonses and complaint, the fact that Plaintiffs were unaware that the service was ineffective until the instant motion to dismiss was filed, and the fact that Defendant Evans, Defendant Ratzel, and Defendant Finnigan had notice of the litigation, the Court exercises its discretion to extend Plaintiffs' time to serve these parties.[6]

---

[6]    The docket sheet reflects that Plaintiffs have since attempted to re-serve Defendant Ratzel through personal service, but there is no indication as to the status of service on Defendant Evans or Defendant Finnigan.  (*See* Dkt. 14-3).

The Court does not reach the remaining bases for dismissal of Plaintiffs' complaint as to Defendant Evans, Defendant Ratzel, and Defendant Finnigan.   In other words, "where, as here, 'a [c]ourt is asked to rule on a combination of Rule 12 defenses,' the court should 'pass on the jurisdictional issues before considering whether a claim is stated in the complaint.'"   *Zeballos v. Tan*, No. 06 CIV. 1268 (GEL), 2006 WL 1975995, at *5 (S.D.N.Y. July 10, 2006) (quoting *Sunrise Indus. Joint Venture v. Ditric Optics, Inc.*, 873 F. Supp. 765, 769 (E.D.N.Y.1997) and *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963) (en banc)).   Because the Court does not have personal jurisdiction over the defendants who were never properly served, and because the Court may never have jurisdiction over them if Plaintiffs fail to serve the summonses and complaint, it may ultimately be unnecessary for the Court to address the various arguments raised by these defendants in support of dismissal.[7]   *See, e.g.*, *Feingold v. Hankin*, 269 F. Supp. 2d 268, 270 (S.D.N.Y. 2003) (finding that plaintiff failed to properly serve defendant and deferring further discussion on the merits of plaintiff's claim, until all parties have been properly served); *see also Zeballos*, 2006 WL 1975995, at *6-7 (where the court denied defendant's motion to dismiss plaintiff's complaint based on improper service and instead extended plaintiff's time to serve, also declining to consider defendant's additional defenses and motion to strike, and denying plaintiff's motion to dismiss counterclaims "as moot, without prejudice to renewal if defendant is properly served and resubmits her counterclaims

---

[7]     Of course, if the Court did address the merits, there is no reason to believe that its conclusions would be any different with respect to these defendants than those reached below with respect to the other defendants.

against plaintiff").  If Plaintiffs properly serve them, Defendant Evans, Defendant Ratzel, and Defendant Finnigan may renew their remaining arguments in support of dismissal in any subsequent motion.

III.   **Challenges to the Merits of Plaintiffs' Claims**

The Court will now address the merits-based claims made by the properly-served Defendants.

A.     **Procedural Due Process Claim**

The Fourteenth Amendment to the United States Constitution provides in part that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "To plead a violation of procedural due process . . . a plaintiff must first identify a property right, second show that the government has deprived him of *that* right, and third show that the deprivation was effected without due process." *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013) (quoting *Local 342, Long Island Pub. Serv. Emps. v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994)); *see also Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002) (review of a procedural due process claim involves a "two-step inquiry"; the court "must determine (1) whether [the plaintiff] possessed a liberty or property interest and, if so, (2) what process [the plaintiff] was due before [the plaintiff] could be deprived of that interest").

In their procedural due process claim, Plaintiffs allege that they had a property right in the Mauser, were assured by Defendants of its safekeeping, and that Defendants' destruction of the Mauser without providing prior notice to Plaintiffs violated Plaintiffs' procedural due process rights.

- 21 -

The Court has already determined that Plaintiffs have adequately pleaded the existence of a property right in the Mauser and need not re-visit that element of this claim. In addition to challenging Plaintiffs' property rights in the firearm, Defendants also highlight the fact that Plaintiffs received a Certificate of Non-Destruction when they first provided the Mauser to the Town of Amherst in 2015, but that there are no allegations that Plaintiffs ever applied for or secured a new Certificate of Non-Destruction when they relinquished the Mauser to the Town for a second time on June 22, 2016. Defendants argue that the lack of a Certificate of Non-Destruction for the June 22, 2016 re-surrender impacts Plaintiffs' ability to assert a due process claim. (Dkt. 5-1 at 15).

Defendants cite N.Y. Penal Law § 400.05, under which they contend that the Mauser was properly declared a nuisance and destroyed, as the relevant guideline for the procedure to protect property rights for a firearm surrendered thereunder. This provision provides in relevant part:

> A firearm or other weapon which is surrendered, or is otherwise voluntarily delivered pursuant to section 265.20 of this chapter and which has not been declared a nuisance pursuant to subdivision one of this section, shall be retained by the official to whom it was delivered for a period not to exceed one year. Prior to the expiration of such time period, a person who surrenders a firearm shall have the right to arrange for the sale, or transfer, of such firearm to a dealer in firearms licensed in accordance with this chapter or for the transfer of such firearm to himself or herself provided that a license therefor has been issued in accordance with this chapter. *If no lawful disposition of the firearm or other weapon is made within the time provided, the firearm or weapon concerned shall be declared a nuisance and shall be disposed of in accordance with the provisions of this section.*

*Id.* § 400.05(6) (emphasis added). Defendants contend that Plaintiffs' inaction before the one-year time period provided for in this statute permitted Defendants to declare the

Mauser as a nuisance and precludes Plaintiffs from asserting a procedural due process claim arising from its disposal.  In response, Plaintiffs highlight another portion of the statute which requires that "the official to whom the weapon, instrument, appliance or substance is so surrendered shall not destroy the same if (a) a judge or justice of a court of record, or a district attorney, shall file with the official a certificate that the non-destruction thereof is necessary or proper to serve the ends of justice." *Id.* § 400.05(3).

Defendants cite no regulation or other legal authority to support their contention that the original Certificate of Non-Destruction provided to Plaintiffs became invalid after Plaintiffs' temporary retrieval of the firearm on June 20, 2016, and that the June 22, 2016 re-surrender of the Mauser required Plaintiffs to apply for and secure a second Certificate of Non-Destruction.  At this stage of the proceedings, factual questions exist as to whether Plaintiffs were provided with the process they were due prior to the destruction of the Mauser and the Court concludes that they have plausibly alleged that they were not.  For these reasons, the Court concludes that Plaintiffs have plausibly stated a § 1983 claim for violation of their procedural due process rights.

But having found that Plaintiffs sufficiently pleaded a § 1983 claim for procedural due process is not the end of the Court's inquiry.  Although not raised by Defendants, a party's failure to sufficiently plead personal involvement in a § 1983 claim is one that can be raised by the Court.  *Hickman v. City of New York*, No. 24-CV-1754 (LJL), 2024 WL 3445194, at *1 (S.D.N.Y. July 17, 2024) ("Plaintiff does not allege Munyin or Studwood's personal involvement.  Accordingly, the Court *sua sponte* dismisses the claims against those individuals without prejudice."); *Brown v. Rotenberg*, 268 F. Supp. 3d 445, 450

(W.D.N.Y. 2017) ("A claim which fails to demonstrate a defendant's personal involvement in the alleged constitutional deprivation is subject to *sua sponte* dismissal." (citing *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997))).

Here, Plaintiffs' use of impermissible "group pleading," without a proper identification of the personal involvement of each defendant, is not adequate in the context of § 1983. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Surgalign Spine Techs., Inc.*, No. 22-CV-09870 (JLR), 2024 WL 477031, at *4 (S.D.N.Y. Feb. 7, 2024) ("It is well-established in this Circuit that plaintiffs cannot simply 'lump' defendants together for pleading purposes." (quoting *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 728 (S.D.N.Y. 2021))); *Abadi v. NYU Langone Health Sys.,* No. 21CIV11073RAGWG, __ F. Supp. 3d __, 2024 WL 396422, at *2 (S.D.N.Y. Feb. 2, 2024) (noting that the use of "group pleading" is "routinely rejected by courts as insufficient to state a claim as to any particular defendant").

Plaintiffs' complaint asserts a due process claim against all Defendants but does not specify how each defendant was responsible for any alleged violation of Plaintiffs' rights. While the reference in one paragraph that Defendant Johnson assured Plaintiffs of the Mauser's safekeeping (Dkt. 1 at ¶ 82) but that Defendant Johnson then signed over the Mauser for transport to be destroyed (*id.* at ¶ 66) may satisfy Defendant Johnson's personal involvement in the claim, the lack of any allegations relating to any of the other individual Defendants is plainly insufficient.

For these reasons, Defendants' motion to dismiss Plaintiffs' procedural due process claim is granted as to all Defendants except for Defendant Johnson and the Town of Amherst, as explained further below, to which it is denied.

### B.      Substantive Due Process

"While procedural due process prohibits deprivations of life, liberty, or property without constitutionally adequate procedures, substantive due process protects these substantive rights 'no matter the process employed by the State.'" *Goode v. Doe*, No. 3:24-CV-830 (KAD), 2024 WL 4008245, at *2 (D. Conn. Aug. 30, 2024) (quoting *Case v. Anderson*, No. 16-CV-983 (NSR), 2017 WL 3701863, at *14 (S.D.N.Y. Aug. 25, 2017))). To state a claim for a violation of substantive due process, a plaintiff must allege that he or she possessed "(1) a 'valid property interest in a constitutionally-protected benefit' and (2) deprivation of that interest in a manner that is 'arbitrary,' 'conscience-shocking,' or 'oppressive in the constitutional sense.'" *Apple Hill Solar LLC v. Cheney*, No. 2:23-CV-644, 2024 WL 3925912, at *9 (D. Vt. Aug. 23, 2024) (quoting *Doe v. Zucker*, 520 F. Supp. 3d 217, 258 (N.D.N.Y. 2021)).  "Substantive due process protects individuals against government action that is arbitrary, . . . conscience-shocking, . . . or oppressive in a constitutional sense . . . but not against government action that is 'incorrect or ill-advised.'" *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (internal quotation marks and citations omitted).  "To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Okin v. Village of Cornwall-On-Hudson Police*

*Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998)).

In their substantive due process claim, Plaintiffs allege that Defendants acted arbitrarily, oppressively, and in a conscience-shocking manner when they authorized the destruction of the Mauser in disregard of its Certificate of Non-Destruction and failed to provide Plaintiffs with an opportunity to be heard before ordering the destruction.  But Plaintiffs' allegations do not rise to the level of conduct so egregious or outrageous that it could be deemed to shock the conscience, and Defendants' purported failure to follow the appropriate procedures in destroying the firearm cannot satisfy that element.

For these reasons, Defendants' motion to dismiss Plaintiffs' substantive due process claim is granted.

### C.    Takings Clause

"The Takings Clause of the Fifth Amendment states that private property shall not be taken for public use, without just compensation." *Knick v. Twp. of Scott, Pennsylvania*, ___ U.S. ___, 139 S. Ct. 2162, 2167 (alteration and internal quotation marks omitted); *Martell v. City of St. Albans, Vermont*, 441 F. Supp. 3d 6, 21 (D. Vt. 2020) ("In order to state a claim under the Takings Clause, a plaintiff must sufficiently plead: (1) a protected property interest; (2) that has been taken under color of state law; (3) without just compensation.").   "The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005).  "The plaintiff must also allege facts showing that the property was taken for a public use." *Wik v. Vill. of Holley*, No. 22-CV-6414DGL,

2023 WL 6958794, at *14 (W.D.N.Y. Oct. 20, 2023). "It is well established that a takings plaintiff bears the burden of proof to establish that the government action caused the injury." *St. Bernard Par. Gov't v. United States*, 887 F.3d 1354, 1362 (Fed. Cir. 2018). Importantly, "takings liability does not arise from government inaction or failure to act." *Id.* at 1361.

Plaintiffs' takings claim is based on Defendants' destruction of the Mauser. Defendants argue that this case does not involve a "taking" because the Mauser was not taken for public use but was destroyed within the bounds of Defendants' police power. The Court agrees with Defendants. While "[t]he Takings Clause protects 'personal property . . . against physical appropriation' by the government, just as it protects real property, *Boehringer Ingelheim Pharms., Inc. v. United States Dep't of Health & Hum. Servs.*, No. 3:23-CV-01103 (MPS), 2024 WL 3292657, at *8 (D. Conn. July 3, 2024) (quoting *Horne v. Dep't of Agriculture*, 576 U.S. 350, 359 (2015)), a plaintiff still must adduce factual allegations that the property was taken for "public use." Here, Plaintiffs have failed to do so. *Sullivan v. Maha*, 834 F. App'x 619, 621 (2d Cir. 2020) (plaintiff could not state a Takings Clause claim where his pistol permit was suspended and his guns were possessed by the county because he had "not adduced any evidence that his guns were taken for 'public use'"); *see also Chyung v. City of Norwich*, No. 3:22CV712 (MPS), 2023 WL 3289088, at *3 (D. Conn. May 5, 2023) ("When police officers steal or lose a citizen's personal property there is no 'public use' of property implicating the Fifth Amendment."); *Gauthier v. Kirkpatrick*, No. 13-cv-187, 2013 WL 6407716, at *7 n.8 (D. Vt. Dec. 9, 2013)

- 27 -

(plaintiffs did not allege cognizable takings claim when they alleged that "personal property was stolen, not taken by the government for 'public use'").

For these reasons, Defendants' motion to dismiss Plaintiffs' Takings Clause claim is granted.

### D. *Monell* Claim Against Town of Amherst

A municipality may only be named as a defendant pursuant to § 1983 in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under § 1983. A municipality may not be held liable just because it employs a tortfeasor. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992). It is only where a municipality, through the execution of its policies, deprives an individual of his constitutional rights, that it can be held liable for an injury. *Monell*, 436 U.S. at 694; *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (when a plaintiff seeks to impose liability on a municipality, he must allege that the constitutional violation was caused by "action pursuant to official municipal policy" (quoting *Monell*, 436 U.S. at 691).

As a threshold matter, although Plaintiffs' complaint includes an independent cause of action against the Town of Amherst for the policy, custom, and practice of Defendants and failure to supervise and train, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 257 (2d Cir. 2020). In other words, the question before the Court is whether

- 28 -

Plaintiffs have alleged facts from which a factfinder could plausibly conclude that the Town of Amherst caused Plaintiffs' claimed Fourteenth Amendment constitutional violations. At this juncture, the Court finds that they have with respect to the procedural due process allegations, for the reasons that follow.

> Official municipal policy can be established by alleging:
>
> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 315 (N.D.N.Y. 2023) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)). Only in limited circumstances can a failure to train "certain employees about their legal duty to avoid violating citizens' rights . . . rise to the level of an official government policy for purposes of § 1983." *RF v. S. Country Cent. Sch. Dist.*, No. 13CV2710 (SJF)(AKT), 2016 WL 5349782, at *11 (E.D.N.Y. Sept. 23, 2016) (quoting *Connick*, 563 U.S. at 61).

"Importantly, courts have dismissed custom or practice *Monell* claims that rely solely on one instance of conduct to prove the existence [of] a persistent and widespread custom. In fact, the very foundation of *Monell* liability rests upon the notion that 'isolated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify liability.'" *Vasquez v. City of New York*, No. 20-CV-4641 (ER), 2023 WL 8551715, at *4 (S.D.N.Y. Dec. 11,

2023) (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012)); *see also*

*Balchan v. City Sch. Dist. of New Rochelle*, No. 21-CV-04798 (PMH), 2023 WL 4684653,

at *7 (S.D.N.Y. July 21, 2023) ("[A] custom or policy cannot be shown by pointing to a

single instance of unconstitutional conduct by a mere [government] employee. . . ."

(quoting *Newton v. City of N.Y.*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008)).

Plaintiffs allege that the Town of Amherst had a policy, custom, and practice of

exhibiting deliberate indifference to the constitutional rights of persons in the Town of

Amherst.  They allege that the Town of Amherst inadequately trained and supervised its

officers to, among other things, follow proper procedures as to the legal effect of a

Certificate of Non-Destruction, establish sufficient measures on how to handle property

subject to a Certificate of Non-Destruction, provide processes for an appeal of the failure

to issue a Certificate of Non-Destruction, and follow procedures for documenting

extensions of these agreements.  (Dkt. 1 at ¶¶ 121, 122).  They argue that these policies

and customs have impacted other Town of Amherst residents, including a resident they

identify who became aware that the Town destroyed some jewelry stolen from her, as well

as other residents who have had their property lost or destroyed.  (*Id.* at ¶¶ 121, 122).

Moreover, they allege that at the same time the Mauser was destroyed, the Town destroyed

over 100 firearms from 46 different people and that upon information and belief, the Town

did not notify any of the owners of that property prior to the destruction.  (*Id.* at ¶ 125).

Here, the allegations in Plaintiffs' complaint concerning an alleged policy or custom

by the Town of Amherst to violate constitutional rights go beyond those just affecting

Plaintiffs.  Likewise, Plaintiffs have identified particular omissions in the Town of

Amherst's training of its employees regarding proper procedures in issuing and enforcement of Certificates of Non-Destruction.  At this stage of the proceedings, Plaintiffs have plausibly alleged their claim.  *See Rodriguez v. City of New York*, 607 F. Supp. 3d 285, 293 (E.D.N.Y. 2022) ("Under the failure to train theory, a municipality may be liable 'when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights . . . [but] the policymakers choose to retain that program.'" (quoting *Buari v. City of New York*, 530 F. Supp. 3d 356, 399 (S.D.N.Y. 2021))).

For these reasons, Defendants' motion to dismiss Plaintiffs' *Monell* claim arising from procedural due process violations by the Town of Amherst is denied.

### E.    Failure to Intervene

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).  Therefore, "liability attaches where (1) the officer had a realistic opportunity to intervene to prevent the harm; (2) a reasonable person in the officer's position would have known that the victim's constitutional rights were being violated; and (3) the officer did not take reasonable steps to intervene."  *Gochnour v. Burri*, No. 6:15-CV-06174, 2018 WL 10944594, at *3 (W.D.N.Y. July 9, 2018).

Plaintiffs generally allege that Defendants failed to take reasonable steps to prevent its officers from engaging in illegal acts and were capable of doing so.  But as Defendants point out, Plaintiffs' complaint lacks any allegations that any officer knew that Plaintiffs'

constitutional right would be violated by the destruction of the Mauser, and/or that they had a reasonable opportunity to prevent that harm.  Even drawing all reasonable inferences in Plaintiffs' favor at the motion to dismiss stage, the Court agrees with Defendants that Plaintiffs' contentions that any Defendant was in a position to intervene are wholly conclusory and insufficient.

Accordingly, Plaintiffs have failed to plausibly alleged a failure to intervene claim and Defendants' motion to dismiss this claim is granted.

### F.    Abuse of Process

"When a plaintiff asserts an abuse-of-process claim under Section 1983, '[the Second Circuit has] turn[ed] to state law to find the elements'—in this case, New York State law."  *Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 958 n.5 (2d Cir. 2015) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)); *see Savino v. City of New York*, 331 F.3d 63, 76-77 (2d Cir. 2003) (citing New York State decisional law in analyzing a § 1983 claim for abuse of process).

Under New York law, "a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  *Folk v. City of New York*, 243 F. Supp. 3d 363, 375 (E.D.N.Y. 2017) (quoting *Cook*, 41 F.3d at 80).  In evaluating the third prong, the Second Circuit has distinguished between an "improper motive" and an "improper purpose."  *See Savino*, 331 F.3d at 77 ("In order to state a claim for abuse of process, a plaintiff must establish that the defendants had an improper *purpose*

in instigating the action. . . .   '[I]mproper motive is not enough.'" (quoting *Dean v. Kochendorfer*, 237 N.Y. 384, 390 (1924))); *see also Rao v. City of New York*, No. 14CV7422(RRM)(LB), 2018 WL 1582289, at *8 (E.D.N.Y. Mar. 29, 2018) ("The case law distinguishes between a malicious motive *and* an improper purpose.  The former, by itself, is insufficient to state a claim of abuse of process; the plaintiff must also allege that the defendant acted primarily to achieve an improper objective."); *Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984) ("A malicious motive alone . . . does not give rise to a cause of action for abuse of process.").   "In New York, such wrongful purposes have included economic harm, extortion, blackmail, and retribution."  *Abreu v. Romero*, No. 08 Civ. 10129 (LAP), 2010 WL 4615879, at *8 (S.D.N.Y. Nov. 9, 2010) (citing *Bd. of Ed. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc., Local 1889 AFT AFL-CIO*, 38 N.Y.2d 397, 404 (1975)), *aff'd,* 466 F. App'x 24 (2d Cir. 2012).

Defendants argue that Plaintiffs' abuse of process claim should be dismissed because it does not plead any plausible facts to support the elements of the claim and simply alleges the destruction of property in circumvention of the Certificate of Non-Destruction. The Court agrees.  The only factual evidence Plaintiffs point to as support for this claim is Defendant Mann's comment that the Town "isn't a storage facility for residents."  This statement cannot serve to sustain a showing of an improper collateral objective and on this basis, Defendants' motion to dismiss Plaintiffs' abuse of process claim is granted.

### G.    Conspiracy

Plaintiffs concede that their complaint does not state a valid claim for conspiracy pursuant to § 1983.  (Dkt. 9 at 25 n.7).  Defendants' motion to dismiss this claim is accordingly granted.

### H.    Common Law Conversion

To state a claim for conversion under New York law, "the plaintiff must allege that (1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another, (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused."  *V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 133 (2d Cir. 2022) (citation omitted); *see Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006) ("[C]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.") (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44 (1995)).

Plaintiffs assert a conversion claim against Defendant Johnson and Defendant Walsh.  (Dkt. 1 at ¶¶ 154-160).  Defendants' argument for dismissal of Plaintiffs' conversion claim rests on their contention that Plaintiffs failed to properly establish their right of ownership, possession, or control over the Mauser before its destruction. Defendants also argue that Plaintiffs voluntarily surrendered any ownership they might have in the Mauser after the one-year period expired.  As set forth above, at this stage of the proceedings, when taking the facts alleged in the complaint as true, Plaintiffs have adequately alleged their ownership rights in the Mauser sufficient to pursue claims relating

to its destruction.  They also sufficiently plead that Defendant Walsh and Defendant Johnson exercised dominion over Plaintiffs' property when they signed it over to Covanta Energy for destruction.  When Plaintiffs made a demand for the Mauser's return, the demand was refused due to its destruction.  At this stage, these allegations are sufficient. Accordingly, Defendants' motion to dismiss Plaintiffs' conversion claim is denied.

## IV.    Leave to Amend and Plaintiffs' Options

The Court finds that it is in the interest of justice to permit Plaintiffs leave to amend their complaint if they wish to attempt to remedy some of the deficiencies identified. Again, Plaintiffs are only being granted leave to amend with respect to the named defendants.  Should Plaintiffs elect not to file an amended complaint in accordance with this Decision and Order, the remaining claims against the served defendants will be dismissed except for the § 1983 procedural due process claim against the Town of Amherst and Defendant Johnson and the conversion claim against Defendant Walsh and Defendant Johnson will proceed.

Thus, Plaintiffs' options based on this Decision and Order are as follows:

1.     Plaintiffs may seek to serve Defendant Evans, Defendant Ratzel, and Defendant Finnigan, with an extension of time that the Court will grant.  Of course, upon service, those defendants may elect to pursue a motion to dismiss addressing the merits of the claims.

2.     Plaintiffs may file an amended complaint seeking to address the deficiencies identified herein as to those defendants who have been named.  If Plaintiffs are going to

also seek to continue to pursue claims against the non-served defendants, they may also amend as to those defendants, but service will still need to be effectuated.

3.      If Plaintiffs seek to add defendants who have not yet been named, they need to file a formal motion seeking that relief.

To be clear, the Court is not encouraging Plaintiffs to continue with what can fairly characterized as a "kitchen sink" approach to this litigation, and cautions Plaintiffs that they may wish to evaluate the propriety of proceeding with an amended complaint.  Indeed, an amended complaint that fails to sufficiently articulate the causes of action will only draw another motion to dismiss by Defendants and further delay the resolution of this matter. But because Plaintiffs have not been afforded an opportunity to amend, the Court is inclined to allow them the opportunity to do so.

Because the schedule that the Court will put in place, including the deadline for service of Defendant Evans, Defendant Ratzel, and Defendant Finnigan, and the deadline for any answer or further motion to dismiss by Defendants, if applicable, will depend on the option(s) selected by Plaintiffs, the Court directs that Plaintiffs file a letter with the Court within 10 days of this Decision and Order identifying the option(s) that they intend to pursue.  The Court will then set a schedule.

## **CONCLUSION**

For the foregoing reasons, the Court grants in parts and denies in part Defendants' motion to dismiss (Dkt. 5) and grants in part and denies in part Plaintiffs' cross-motion to strike, motion for an extension of time to serve, and motion to amend (Dkt. 9).

The Clerk is directed to terminate Defendant Mann as a party.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:       September 26, 2024
             Rochester, New York